RIEPENHOFF, CO-ADMR., ET AL., *v.* MILLER, APPELLANT; LEHMAN, APPELLEE.

(No. 12-87-10—Decided August 30, 1988.)

*Clemens, Korhn, Palmer, Schmenk & Liming* and *Stephen F. Korhn,* for appellant.

*Thomas F. Vivyan,* for appellee.

MCBRIDE, J. This appeal is from a judgment of the Court of Common Pleas of Putnam County which sustained the motion of third-party defendant, Joseph C. Lehman, the appellee, for summary judgment.

Robert L. Riepenhoff, a passenger, died as the result of a single-vehicle accident when David C. Miller, appellant, ignored a stop sign and, traveling at an unreasonable rate of speed, proceeded straight ahead at a T-intersection into a ditch when the only roadway was to the right or left. The vehicle turned over, injuring the driver and killing the passenger. The action of the estate against the operator of the vehicle, David C. Miller, was settled.

The summary judgment and this appeal involves the claim of David C. Miller, the driver, for indemnification and/or contribution from Lehman because at the time of the accident Miller was being pursued by Lehman because Miller had knocked over Lehman's mailbox while turning around in Lehman's driveway.

The tragedy that ensued is poignant because the parties were acquainted and the boys were high school students who had been socializing and who had consumed some beer. The events took place before midnight when the damage to the mailbox started the series of events in which the owner could not identify the boys.

Miller admitted that the car he operated knocked over the Lehman mailbox as he was attempting to turn around and return in the direction he came. The lights of the vehicle went out as he took off and fled from the scene of his accident. Lehman heard the accident, obtained the keys to his car and yelled at the boys. Miller said he fled at the urging of his passenger. He sped away at fifty-five to sixty miles per hour.

Both Miller and Lehman were aware that mailboxes had recently been knocked over by cars. Lehman pursued the car in his own vehicle for the purpose of obtaining the license number of the car that had damaged his property. When Miller reached a narrow, gravel and stone road, he turned off. This is the road that led to the T-intersection and stop sign with which Miller was not familiar.

The only significant factual dispute

is whether Lehman paused in the pursuit; however, since this is on summary judgment, it is accepted that the Lehman car continued and was the distance between a couple of telephone poles behind the fleeing Miller car before the accident. The actual distance was not determined.

The trial court in its revised decision found that even assuming a breach of duty by Lehman in pursuing the Miller car, the action of Lehman was not the proximate cause of Miller's accident on the highway; that reasonable minds could only conclude that Lehman's conduct did not stand in a relation of cause and effect to Miller's one-car accident; and that Miller was not entitled to either indemnification or contribution from Lehman for injuries caused solely by Miller.

The single assignment of error asserts that reasonable minds could differ as to whether the pursuit of the fleeing vandal was a proximate cause of Miller's accident.

The trial court accepted an assumption that the pursuit of a person who damaged property is negligence. The court proceeded to find a lack of probable cause for results which the pursued brought upon himself and his passenger while in flight.

In reviewing the rationale for the judgment we do not accept the assumption that one whose property has been invaded and damaged by a stranger must stand by helplessly and make no effort to identify the intruder or, as in this case, to obtain the license plate number of the car. In recent years the right of a homeowner to intentionally impose physical injury, even for a felony, upon an invader has been limited, except in self-defense; however, our attention has not been called to one case in which the right to pursue and to identify has been denied. The lack of authority to support appellant's position that the appellee violated a duty owed to appellant suggests that such duty does not exist.

Appellant compares the situation here to that in *Mast* v. *Lehman* (1965), 3 Ohio Misc. 9, 31 O.O. 2d 543, 204 N.E. 2d 260, in which two defendants while drag-racing injured a third party. There is no similarity between such a joint venture where the negligence of the participants is the race itself on a public highway. *Boykin* v. *Bennett* (1961), 253 N.C. 725, 118 S.E. 2d 12.

In the instant case, the relationship of the defendants lacks any semblance of mutuality or agreement such as required to make one vicariously liable for the acts of the other. If the appellee, as the pursuer, had similarly and recklessly injured another it would be equally apparent that he—and he alone—would be responsible for his own acts. This is the consequence of a person who elects to flee as well as one who elects to pursue. Absent a joint venture or some vicarious relationship, each is responsible for his own acts and neither is responsible for the acts of the other. There can be no indemnification or contribution among strangers, who share no mutual or common interest, for the separate, independent acts of either party. Their interests in this case were antagonistic.

To defeat the motion for summary judgment in this case, it was essential for appellant to establish a specific duty owed by Lehman to Miller, that such duty was breached and that such breach proximately caused the accident. Appellant failed to identify or to establish any duty by Lehman. Lehman had every right to use the highway. Appellant would deny him such right because of the age of the boys, their fear of what they had done and their misguided idea that they should not be identified or held responsible for their acts. There is no legal or reasonable justification in these circumstances to impose a duty of exer-

cising ordinary care to encourage a minor to escape responsibility for his acts or to avoid any portion of the liability for his own reckless driving.

An owner in fresh pursuit of a criminal has no duty to use ordinary care to anticipate and protect a participant in the criminal venture, while in flight, from new and independent dangers of the criminal's own creation and incidental to a reckless disregard of his own safety in his effort to escape. The law does not roll out a red carpet in front of such person to exonerate misdeeds in flight or to facilitate the escape of such person from the consequences of his original offense. The flight from the scene of a motor vehicle accident is in itself unlawful.

The argument that Lehman was the catalyst that initiated the series of events that led to the tragedy is disingenuous. It ignores the admitted fact that the first event took place when Miller operated his vehicle on Lehman's property, damaged the mailbox and instantly fled to avoid the discovery of his identity. The catalyst for the events that followed was Miller, not Lehman. The flight encouraged the pursuit as a natural and foreseeable consequence of the unlawful act and the effort to escape.

The sympathetic appeal based upon a fear of "under age boys" (Miller was a licensed driver) facing a "violent confrontation" with an angry man is out of place. The only factual support for this is that the man "yelled" at them. Once Lehman discovered the damage, the expressed purpose of the boys was to get out of there and in the darkness they hurriedly departed with car lights out and raced away to avoid identification. This was the catalyst and the motivation that led to the tragedy. The pursuit was not in itself unlawful nor was it the cause of the flight. It prolonged the flight depending upon the willingness of either party to individually accept the danger incident to the speed of travel to accomplish their separate, independent and conflicting purposes. Either could have interrupted the chase at any moment.

Continuation of the flight and of the pursuit did not excuse either party from proceeding in a lawful manner on the roadway. Because a joint adventure was not involved, neither party was responsible for the conduct of the other. Each violation was a separate, independent act for which only the one who committed it was responsible.

We find that reasonable minds can only conclude that the appellee did not violate a duty to appellant; that the tragedy was caused solely and independently by the negligent acts of appellant. While the causal factor provides an obvious solution, as adopted by the trial court, the failure of appellant to establish a violation by appellee of a legal duty to the appellant is determinative.

The assignment of error is without merit.

*Judgment affirmed.*

Evans and Shaw, JJ., concur.

Robert L. McBride, J., retired, of the Second Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.