HPS, INC. v. ALL WOOD TURNING CORPORATION

No. 7426DC38

(Filed 17 April 1974)

1. **Uniform Commercial Code § 20— acceptance of goods — liability for contract price — breach of warranty**

   If a buyer accepts the goods, the buyer must pay the contract price for the goods accepted; however, the buyer retains the right to counterclaim for breach of warranty by the seller and the burden shifts to the buyer to establish such breach of warranty.

2. **Uniform Commercial Code § 20— acceptance of goods**

   The trial court should have submitted an issue as to whether the buyer accepted the goods where the evidence disclosed that the seller installed a boiler plant conversion system in the buyer's plant, that the system was operated for some time although the seller was unable to correct the system so that the buyer could burn its wood refuse without smoke as allegedly warranted by the seller, and that the buyer refused to allow the seller to remove the system when the seller offered to return the buyer's boiler to its pre-conversion status.

3. **Uniform Commercial Code § 22— acceptance of goods — recovery by seller**

An acceptance of goods entitles the aggrieved seller to recover the contract price of the goods as well as any expenses reasonably incurred as a result of the breach. G.S. 25-2-709; G.S. 25-2-313(1)(a).

4. **Sales § 18; Uniform Commercial Code § 21— issues as to breach of express warranty**

The trial court should have submitted to the jury issues as to whether the seller of a boiler conversion system expressly warranted that the system would permit the burning of wood refuse without smoke, whether the seller breached the express warranty, and the amount of damages recoverable for breach of the express warranty.

5. **Uniform Commercial Code § 21— breach of express warranty — measure of damages**

The measure of damages for breach of express warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless circumstances show damages of a different amount, plus any incidental damages which may be proven and such consequential damages as were within the contemplation of the parties. G.S. 25-2-714(2); G.S. 25-2-715.

APPEAL by defendant from *Johnson, Judge,* 11 June 1973 Session of District Court held in MECKLENBURG County.

This is a civil action wherein the plaintiff, HPS, Inc., seeks to recover $4,574.00 from defendant, All Wood Turning Corporation, which sum allegedly represents the agreed contract price owed to plaintiff for the installation of a boiler plant conversion system.

The uncontroverted evidence of plaintiff and defendant tends to establish the following:

In September of 1971 the plaintiff and defendant entered into a written contract the terms of which required the plaintiff to install a boiler conversion system for the agreed price of $4,574.00. In this contract the plaintiff promised that the installed system would permit the defendant to burn its wood refuse without smoke; however, despite repeated adjustments by plaintiff, the system was never able to produce the smokeless burning of wood refuse.

Plaintiff billed defendant for the contract price of $4,574.00; but in light of the fact that the plaintiff was unable to produce the smokeless burning, defendant refused to pay. Plaintiff then offered to cancel its invoice for billing, remove its equipment,

HPS, Inc. v. All Wood Turning Corp.

and return defendant's boiler to its original condition, but the defendant refused either to pay the invoice bill or to allow plaintiff to return defendant's boiler to its pre-conversion status.

Thereafter, in April of 1972, the present action was commenced with the filing of a complaint by plaintiff. Defendant filed an answer and counterclaim alleging that the plaintiff had breached an express warranty and as a consequence of this breach was liable to the defendant in the amount of $5,000.00.

Four issues were submitted to and answered by the jury as follows:

"1. Was there a Contract between the parties?

ANSWER: Yes.

2. Was the Contract breached by the plaintiff?

ANSWER: No.

3. What amount, if any, is the plaintiff entitled to recover for the reasonable value of labor performed and materials and equipment furnished to and for the defendant?

ANSWER: $4,574.00.

4. What amount, if any, is the defendant entitled to recover from the plaintiff?

ANSWER: None."

From a judgment entered on the verdict, defendant appealed.

*Mraz, Aycock, Casstevens & Davis by John A. Mraz for plaintiff appellees.*

*Cagle and Houck by Joe N. Cagle and William J. Houck for defendant appellant.*

HEDRICK, Judge.

Defendant contends that the trial court committed error when it failed to grant defendant's motions for a directed verdict and for a judgment notwithstanding the verdict on the issue of plaintiff's breach of the contract and the warranties. The motions were providently denied as there is plenary, competent evidence present in the record to require submission of this case to the jury.

HPS, Inc. v. All Wood Turning Corp.

The transaction in question is one which is governed by the Uniform Commercial Code (Code), G.S. 25-2-102 and G.S. 25-2-105; hence, it is necessary in formulating the legal issues arising on the pleadings and evidence of this case to develop these issues by giving proper regard to the apposite provisions of the Code. In the instant case the four issues submitted to the jury reflect a failure on the part of the trial court to consider the relevance of the Code; and as a result of these issues failing to present the determinative questions, a new trial must be awarded. *Anderson v. Cashion,* 265 N.C. 555, 144 S.E. 2d 583 (1965). It is our view that there are five essential questions which must be submitted to the jury in order to insure that there will be a proper disposition of all the material controversies which arise in this case. A brief discussion of each of these issues follows.

The first issue which must be submitted is: Whether the defendant accepted the goods? Acceptance in Code terminology is a term of art which is unrelated to the question of passage of title from seller to buyer and is "only tangentially related to buyer's possession of goods." White and Summers, *Uniform Commercial Code,* § 8-2, p. 249 (1972). In *Motors, Inc. v. Allen,* 280 N.C. 385, 395, 186 S.E. 2d 161, 167 (1971) our Supreme Court offered this cogent statement about acceptance:

"Acceptance is ordinarily signified by language or conduct of the buyer that he will take the goods, but this does not necessarily indicate that the goods conform to the contract. G.S. 25-2-606(1)(a). Acceptance may also occur by failure of the buyer to 'make an effective rejection' after a reasonable opportunity to inspect. G.S. 25-2-606(1)(b). Effective rejection means (1) rejection within a reasonable time after delivery or tender and (2) seasonable notice to the seller. G.S. 25-2-602. Acceptance precludes rejection of the goods accepted and, if made with knowledge of a nonconformity, cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured. G.S. 25-2-607(2). Thus the buyer may *revoke his acceptance* if (1) 'the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured,' G.S. 25-2-607(2), and (2) the nonconformity substantially impairs the value of the goods. G.S. 25-2-608(1). Revocation of acceptance must be made within a reasonable time after the buyer

---

---

discovers, or should have discovered, the ground for it, [citation omitted], and it is not effective until the buyer notifies the seller of it. G.S. 25-2-608(2)."

[1, 2]  If in applying the foregoing principles to the evidence of this case, the net result is an affirmative answer to the first question, then several consequences follow: (1) the buyer (defendant) must pay the contract price for the goods accepted; (2) the buyer retains his right to counterclaim for a breach by seller; (3) the burden of establishing a breach of any warranty shifts to the buyer. *White and Summers, supra*, at pp. 249-50. The uncontroverted facts of this case disclose that the seller installed the boiler plant conversion system in the buyer's plant; that the system was operated for some time although the seller was unable to correct the system so that the buyer could burn its wood refuse without smoke; and, that the buyer refused to allow the seller to remove the system when the seller made an offer to return the buyer's boiler to its pre-conversion status.

[3]  Therefore, since all of the evidence tends to show that the buyer accepted the goods, and if the jury should believe the evidence and determine that the buyer did in fact accept the goods and answer the first issue in the affirmative, then the jury must consider the second issue, namely: What damages, if any, is seller (plaintiff) entitled to recover of buyer as a result of the acceptance of the goods? An acceptance of the goods entitles the aggrieved seller to recover the contract price of the goods as well as any expenses reasonably incurred as a result of the breach. G.S. 25-2-709 and G.S. 25-2-710.

[4]  The third, fourth, and fifth issues all relate to express warranties. In the third issue, a determination must be made as to whether the seller expressly warranted the goods. Under the facts of this case it would seem that G.S. 25-2-313(1)(a), which reads as follows, would control:

> "(1) Express warranties by the seller are created as follows:
>
>> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

[5]  A positive finding as to the third issue prompts the need to answer the fourth issue, to wit: Was there a breach of the

express warranty? An affirmative answer to the fourth issue, in turn, gives rise to the last question, which is: What damages are recoverable for the breach of an express warranty? The measure of damages for such breach is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless circumstances show damages of a different amount," G.S. 25-2-714(2), plus any incidental damages which may be proven and such consequential damages as were within the contemplation of the parties. G.S. 25-2-715; *Motors, Inc. v. Allen, supra; Hendrix v. Motors, Inc.*, 241 N.C. 644, 86 S.E. 2d 448 (1955). The burden of proving the (1) value the goods would have had if they had been as warranted and (2) the value of the goods as accepted, is on the buyer; and, "[this] burden of proof as to damages from breach of the sales contract cannot be met by mere conjecture." Anderson, *Uniform Commercial Code,* Vol. 2, § 2-714:8, p. 448 (1971). Under the facts of the case now before us the contract price will serve as strong evidence of the value of the goods as warranted; however, upon retrial of this case the defendant (buyer) must bear the burden of proving the value of the goods accepted.

Because of the failure of the trial court to submit to the jury issues which frame the essential questions of fact, a new trial must be awarded. 7 Strong, N. C. Index 2d, Trial, § 40, p. 351. The issues which are suggested in this opinion and the discussion which accompanies them will hopefully provide guidelines in the retrial of this case.

New trial.

Judges CAMPBELL and BALEY concur.